MATTER OF AIRCRAFT No. "N-2476-U"

In Fine Proceedings

LOS-10/2.121

*Decided by Board March 18, 1965*

Since remission in full of $500 penalty imposed under section 239, Immigration and Nationality Act, is not limited to emergent circumstances of 8 CFR 239.2(d), and since section 239 specifically provides that the penalty incurred for violation of *any* regulation made thereunder may be remitted or mitigated, penalty of $500 incurred under section 239 of the Act for failure of pilot to present himself and passenger for inspection is mitigated to extent of a remaining $25 penalty when both are United States citizens returning from a *bona fide* business trip in Mexico, bringing no merchandise, and evidence establishes violation was unintentional and pilot acted in good faith throughout.

IN RE: CESSNA AIRCRAFT, Model 172, No. "N-2476-U" which arrived at Lindbergh Airfield, San Diego, California, from Mexico on September 11, 1963. Persons involved: James D. Ellis, Pilot; and John Thomsen, Esquire, passenger.

This appeal is directed to an administrative penalty of $400 ($500 mitigated to the extent of $100), which the District Director has ordered imposed on the aircraft's pilot for "failure to present the aircraft, yourself, and one passenger for inspection by an immigration officer as required by 8 CFR 239.2(c)."

This flight involved the return portion of a Mexican business trip by the two persons named above, both United States citizens, who brought back no merchandise. At the time of landing, as had been the case during the entire return trip from Mexico, the pilot and his passenger were engrossed in a discussion of the business problem which had caused them to make the flight. They also had not eaten for several hours and were hungry. Accordingly, the pilot forgot about the inspection requirements, taxied the aircraft to that part of the airfield used by the company from whom he had hired the plane, parked it there, and proceeded to a restaurant in San Diego with his passenger to continue their business discussion. While dining, the pilot remembered about inspection and, with his passenger, promptly returned to the airport. He reported to the

73

Government officer on duty, an employee of the Department of Agriculture, who notified an immigration officer. The latter requested the pilot to report to him the following morning, which he did, accompanied by his passenger, an attorney in San Diego.

The statute authorizes the Attorney General to promulgate regulations setting forth, *inter alia*, reasonable requirements for the inspection of arriving aircraft, and passengers and/or crew thereof. Pursuant to this statutory authority, the Attorney General has promulgated 8 CFR 239.2(c), which has the force and effect of law. In substance, that provision of the regulations prohibits the discharge or departure of any passenger or crewman from the aircraft without permission from an immigration officer, under pain of a $500 penalty.

The foregoing facts of record establish that we are confronted here with precisely such a situation as is contemplated by the regulation. Accordingly, liability to the fine has been incurred. This is not seriously challenged.

The District Director has ruled that remission of the fine provided for in section 239 of the statute is permissible only "if the violation was occasioned by emergency or forced landing of the aircraft." In other words, the District Director interprets the statute as permitting the fine to be forgiven in full only where a violation of 8 CFR 239.2(d) is involved. This, however, is not correct.

Section 239 contains the specific provision that the $500 penalty incurred for a violation of *any* regulation made thereunder may be remitted, in accordance with such proceedings as the Attorney General shall prescribe. Clearly, therefore, the District Director's ruling has the effect of having the regulation exceed the scope of its statutory authority. To this extent, therefore, his decision is overruled.

Despite the fact that such action is permissible here, we do not think that remission of the fine is merited. The pilot is admittedly experienced in international flights such as this one. We think a minimum penalty should be permitted to stand to keep him mindful of the inspection requirements in the future.

The Service report of investigation sets forth that the employee of the Department of Agriculture on duty at the airport telephonically informed an immigration officer of the aircraft's arrival and the fact that it had not been inspected. It also reflects that the immigration officer to whom this was made known then called the pilot's wife and requested her to have her husband report to the Government office the following morning (which he did). It then intimates that the Agriculture Department employee was under the impression that the pilot returned for inspection that afternoon as

74

the result of a telephone conversation with his wife putting him on notice of the fact that the immigration officer was looking for him. The testimony of the pilot and his passenger, however, negatives this adverse inference. The District Director appears to have accepted their statements in this respect. We agree with said official that the evidence of record shows that the pilot returned to report for inspection of his own volition.

The District Director has stressed that the pilot made a statement that he had not flown a private aircraft into the United States from a foreign country within the past five years whereas, in fact, aircraft arrival records at the airport involved reflect an arrival by the pilot from Mexico on August 15, 1963. The pilot, on the other hand, insists that he made no such statement and that the immigration officer who attributed it to him confused his statement with that of his passenger who, according to the pilot, stated to the immigration officer that he was not mindful of the requirement of reporting because he had not used a private aircraft in the past five years, relying, instead, on commercial aircraft. The passenger in question, an attorney, has corroborated the pilot's claims in this respect. Accordingly, and in view of the following considerations, we discount this as an adverse factor.

The pilot and his passenger are both citizens of the United States. They brought back no merchandise from Mexico with them. Their trip was for *bona fide* business purposes. We are satisfied that the evidence of record establishes that the violation was unintentional on the pilot's part. We are also convinced that he became aware of this violation without outside influence, and that he thereafter made every reasonable effort to comply with the law and regulations, to wit: he returned to the airport the same afternoon to report; and he complied with the immigration officer's request to report again the following morning. We feel that the evidence shows that the operator of the aircraft was acting in good faith throughout. The operator apparently has no adverse immigration record despite several such flights in the past. It appears that the parties involved are reputable businessmen respected in their communities. The pilot was acting in that capacity as a matter of convenience for his passenger, and not for any immediate financial gain for his services as such. Under these circumstances, we think the penalty should be reduced to the bare minimum.

**ORDER:** It is ordered that the District Director's decision of January 5, 1965, be modified to provide for $375 additional mitigation, and that as so modified the decision of said official be and the same is hereby affirmed. The penalty permitted to stand is $25.